**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DONALD O'CALLAGHAN; CLAUDIA O'CALLAGHAN, <br><br> Plaintiffs, <br><br> v. <br><br> WEBER-STEPHEN PRODUCTS LLC; CAVAGNA NORTH AMERICA, INC.; CAVAGNA GROUP S.P.A.; THE HELPFUL HARDWARE COMPANY, LLC, <br><br> Defendants. | CIVIL ACTION NO.: ___2:26-cv-02275-DCN___ <br><br><br> **COMPLAINT** |

Plaintiffs Donald O'Callaghan ("Donald") and Claudia O'Callaghan ("Claudia"), by and through undersigned counsel, complain of Defendants Weber-Stephen Products LLC ("Weber"); Cavagna North America, Inc. ("Cavagna America"); Cavagna Group S.p.A. ("Cavagna SPA") (with Cavagna America and Cavagna SPA, together "Cavagna"); and The Helpful Hardware Company, LLC ("Hardware Company") (with Weber, Cavagna America, Cavagna SPA, and Hardware Company together, "Defendants"), as follows:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1. Donald and Claudia are and at all relevant times were citizens of South Carolina and reside and at all relevant times resided in Berkeley County, South Carolina.

2. Weber is a limited liability company organized in Delaware and operating from its principal place of business in Illinois.

3. Grills and other products and parts manufactured by Weber presently are and at all

1

relevant times were sold and distributed throughout the United States, including South Carolina.

4.      Cavagna America is a corporation incorporated in and operating from its principal place of business in New Jersey.

5.      Cavagna SPA is a corporation organized in and operating from its principal place of business in Italy.

6.      Cavagna SPA is the parent company of Cavagna America.

7.      Cavagna manufactures regulators, valves, and other gas control products in Italy and distributes those products throughout the United States from distribution centers in New Jersey and Texas.

8.      Hardware Company is a limited liability company organized in Delaware and operating from its principal place of business in Georgia.

9.      Hardware Company, doing business as "Duncan Ace Hardware," presently owns and operates, and at all relevant times owned and operated, its Store #17646 located at 925 Red Bank Road in Goose Creek, South Carolina.

10.     Weber and Cavagna designed, manufactured, distributed, marketed, and sold the product or components of the gas grill product at issue in this case—a "Weber Genesis S-435 4 Burner Liquid Propane Grill" (the "Grill")—in or with knowledge and the intent that it be placed into operation and used in states throughout the United States including South Carolina.

11.     Weber's website, www.weber.com/us/en/storefinder/, lists numerous retail outlets in South Carolina, including the Duncan Ace Hardware in Goose Creek, as stores where Weber grills and other products can be purchased by consumers.

12.     Hardware Company distributed and sold the Grill to Donald in Berkeley County,

2

South Carolina.

13.    Hardware Company assembled the Grill for Donald in Berkeley County, South Carolina.

14.    Upon information and belief, at all relevant times, Defendants derived and derive substantial revenue from products sold to consumers in South Carolina.

15.    Defendants purposefully availed themselves of the privilege of conducting business in interstate commerce throughout the United States including specifically South Carolina and thereby availed themselves of and invoked the benefits and protections of South Carolina law.

16.    The Court has personal jurisdiction over Defendants.

17.    The Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

18.    Venue is appropriate in the South Carolina District Court, Charleston Division because a substantial part of the acts and omissions giving rise to this action occurred in Berkeley County, South Carolina.

## FACTUAL BACKGROUND

19.    Weber designed, manufactured, distributed, marketed, and sold the Grill.

20.    Weber purchased and incorporated into the Grill a gas regulator and hose designed, manufactured, distributed, marketed, and sold by Cavagna.

21.    On January 23, 2024, Donald purchased the Grill online from Hardware Company with the Grill to be assembled by Hardware Company and then picked up by Donald at the Duncan Ace Hardware location in Goose Creek.

22.    On January 31, 2024, Donald picked up the fully-assembled Grill from the Duncan

3

Ace Hardware and transported it to his home in Summerville, South Carolina.

23.    Donald then attempted to use the Grill in the backyard at his home, but the Grill would not ignite.

24.    Donald called Hardware Company and complained regarding the Grill not igniting.

25.    Hardware Company sent an employee to Donald's home to address the issue.

26.    Donald later spoke to the Hardware Company employee who informed Donald that a part was installed backwards and that the Grill should now work.

27.    Donald then used the grill without issue.

28.    On a subsequent occasion, Donald's son   tried to use the Grill but could not get it to ignite.   After turning the Tank off and then turning it back on, the Grill ignited and worked.

29.    On a subsequent occasion, Donald used the grill without issue.

30.    On March 31, 2024, on the fourth instance of a person using the Grill, Donald visually observed all the parts of the Grill and the attached propane tank to be present and in their normal and unaltered condition.

31.    Donald opened the propane tank's gas valve, turned on the first burner to release gas from the tank and into the Grill, pressed the ignition button, and nothing happened.

32.    Donald then visually examined the tank and shut off the tank's gas valve.   After waiting for some time, Donald turned the tank's gas valve back on.

33.    Donald then turned the first burner on to release gas from the Tank into the Grill, pressed the ignition button, and nearly simultaneously, he was struck in the shin by something he later determined to be a piece of the regulator and he was engulfed in an explosion and flames from the ignition of fugitive gas.

4

34.     Firefighters responded to the scene and extinguished the still burning Grill by spraying the fire with water and shutting off the tank's gas valve.

35.     Donald had multiple burns to his nose, hands, left wrist and forearm, and right upper extremities, with approximately five percent of his skin suffering second-degree burns.

36.     Donald was transported to the hospital by ambulance for treatment for his burns and other injuries.

37.     Donald ultimately underwent surgery, debridement of burned skin, and placement of skin substitutes followed by extensive follow up care and home treatments to address his injuries.

38.     At the conclusion of his course of treatment, Donald was left with permanent scarring and skin injuries that remain painful and that will require future evaluation and care.

39.     Donald also began experiencing flashbacks, anxiety, irritability, poor sleep, and vivid dreams of the incident, and he was referred for psychiatric care where he was found to be suffering from depression and PTSD caused by the incident.  Donald was directed to and did undergo psychotherapy and cognitive processing therapy to treat his psychological injuries.

40.     Donald and Claudia, since prior to Donald's purchase of the Grill and through to the present, were husband and wife.

41.     Suffering from the burns, psychological injuries, and other injuries, Donald was not able to provide the companionship, aid, society, and services he formerly provided to Claudia as her husband.

42.     Claudia suffered the loss of companionship, aid, society, and services provided by Donald prior to the incident.

43.    The ignition and explosion of fugitive gas from the Grill and from outdoor grills generally is and is known in the industry to be a hazard present in outdoor grills and dangerous to the users of such grills.

44.    Weber's 2022 "Owner's Manual" for the Grill, which was the operative owner's manual at the time of the incident and remains the operative owner's manual at present, acknowledged the hazard of ignition and explosion of fugitive gas, including in stating "Leaking gas may cause a fire or explosion" and "Do not operate the grill if there is a gas leak present."

45.    The Grill was in an unreasonably dangerous and defective condition when sold to Donald.

46.    The unreasonably dangerous and defective condition of the Grill at the time of the sale to Donald proximately caused Donald's and Claudia's injuries and damages.

47.    Alternative designs and manufacturing methods existed at the time the Grill was designed, manufactured, distributed, and sold such that the Grill could have been design, manufactured, distributed, and sold in a reasonably safe condition.

48.    The danger posed by the sudden ignition and explosion of fugitive gas is a substantial danger as shown by the physical and psychological injuries Donald suffered.

49.    The danger posed by the sudden ignition and explosion of fugitive gas is a substantial danger as shown by the recognition of the danger of that hazard in the industry and in Weber's manual for the Grill including its recognition that "leaking gas," a "gas leak," or "gas escaping" is "a hazardous situation which, if not avoided, will result in death or serious injury."

50.    The available alternative designs and manufacturing methods would not cause a substantial increase in the price of the Grill in relation to the price of the Grill without the available

alternative designs and manufacturing methods and in relation to the extreme physical injuries Donald suffered.

51.     The available alternative designs and manufacturing methods would not cause any decrease in the functioning or utility of the Grill.

52.     The available alternative designs and manufacturing methods would not create any safety concerns.

53.     Defendants failed to warn Donald of the unreasonably dangerous condition of the Grill.

**FOR A FIRST CAUSE OF ACTION**
**Strict Products Liability**

54.     Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

55.     Defendants had duties to design, test, manufacture, assemble, distribute, and sell the Grill so as to not subject users to a product in a defective and unreasonably dangerous condition.

56.     Defendants breached their duties to design, test, manufacture, assemble, distribute, and sell the Grill so as to not subject users to a product in a defective and unreasonably dangerous condition.

57.     The Grill was defective and unreasonably dangerous prior to when it was picked up by Donald on January 31, 2024.

58.     The Grill was designed, manufactured, distributed, and sold in a defective and unreasonably dangerous condition because during normal operation of the Grill the fuel system (*i.e.*, the portion of the grill that moves propane gas from a propane tank to the burners and includes

7

the regulator coupling, regulator, hose and fitting) failed, leaking gas and leading to the ignition and explosion of fugitive gas.

59.     A fuel system that comes apart causing the leak, ignition, and explosion of fugitive gas during normal operation is an unreasonably dangerous and defective condition in a grill.

60.     Available alternative designs and manufacturing methods existed at the time the Grill was designed, manufactured, distributed, and sold.

61.     Use of an available alternative design and manufacturing method would have prevented Donald's injuries without impairing or without substantially impairing the Grill's utility.

62.     The available alternative designs and manufacturing methods were recognized, economically feasible, and technologically feasible at the time the Grill was designed, manufactured, distributed, and sold.

63.     Defendants' breaches of their duties and the defective and unreasonably dangerous condition of the Grill proximately caused Donald's injuries.

64.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and the defective and unreasonably dangerous condition of the Grill, Donald sustained and will sustain injuries and damages including:

a.     Second-degree burns on his face, hands, and upper right extremities;

b.     Psychological injuries and emotional trauma including depression and post-traumatic stress disorder;

c.     Permanent physical impairment;

d.     Physical pain and discomfort;

e.     Inability to perform daily living activities that he performed and enjoyed before the

8

injuries;

f.    Loss of income; and

g.    Property damage.

65.    As a direct, proximate, and foreseeable result of Defendant's breaches of their duties and the defective and unreasonably dangerous condition of the Grill, Claudia had to spend substantial time and effort caring for Donald.

66.    As a direct, proximate, and foreseeable result of Defendant's breaches of their duties and the defective and unreasonably dangerous condition of the Grill, Donald was unable to provide and perform the companionship, aid, society, and services for Claudia that he provided prior to the injuries he suffered on March 31, 2024.

67.    As a direct, proximate, and foreseeable result of Defendant's breaches of their duties and the defective and unreasonably dangerous condition of the Grill, Claudia suffered loss of consortium, loss of time and money, loss of emotional support and society, loss of quality in the martial relationship, loss of comfort and affection, loss of care, and loss of household services.

**FOR A SECOND CAUSE OF ACTION**
**Negligence**

68.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

69.    Defendants owed duties to persons purchasing or using the Grill, including Donald, to design, manufacture, and assemble the Grill in a manner that did not create an unreasonable risk of harm to users.

70.    Defendants breached their duties to Plaintiffs.

71.    Defendants were negligent, grossly negligent, willful, wanton, and reckless in

9

designing, manufacturing, and assembling the Grill in a manner creating an unreasonable danger to persons using the Grill.

72.    Defendants were negligent, grossly negligent, willful, wanton, and reckless in knowing or having should have known of the risk of substantial harm from the sudden failure of the fuel system during normal use resulting in the leak, ignition, and explosion of fugitive gas and failing to take reasonable steps to design and manufacture the Grill to eliminate or minimize the risk to users of that harm.

73.    Defendants' design, manufacture, and assembly of the Grill in a manner where the Grill's fuel system fails during normal operation causing the leak, ignition, and explosion of fugitive gas falls below the level of care a reasonable designer, manufacturer, and assembler would exercise and falls below the level of care recognized in the industry.

74.    Defendants' negligent, grossly negligent, willful, wanton, and reckless design, manufacture, and assembly of the Grill proximately caused Plaintiffs' injuries and damages.

75.    As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions, Donald sustained and will sustain injuries and damages including:

 a. Second-degree burns on his face, hands, and upper right extremities;

 b. Psychological injuries and emotional trauma including depression and post-traumatic stress disorder;

 c. Permanent physical impairment;

 d. Physical pain and discomfort;

 e. Inability to perform daily living activities that he performed and enjoyed before the

injuries;

f.     Loss of income; and

g.     Property damage.

76.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions, Claudia had to spend substantial time and effort caring for Donald.

77.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions, Donald was unable to provide and perform the companionship, aid, society, and services for Claudia that he provided prior to the injuries he suffered on March 31, 2024.

78.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions, Claudia suffered loss of consortium, loss of time and money, loss of emotional support and society, loss of quality in the martial relationship, loss of comfort and affection, loss of care, and loss of household services.

### FOR A THIRD CAUSE OF ACTION
### Loss of Consortium

79.     Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

80.     As alleged in the preceding paragraphs, Defendants are liable for Donald's injuries.

81.     Claudia and Donald have been husband and wife continuously from prior to when Donald purchased the Grill through to the present.

82.     Claudia suffered damages caused by Donald's injuries.

83.     As a direct, proximate, and foreseeable result of Defendants' breaches of their

duties and negligent acts and omissions and the defective and unreasonably dangerous condition of the Grill, Claudia had to spend substantial time and effort caring for Donald.

84.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions and the defective and unreasonably dangerous condition of the Grill, Donald was unable to provide and perform the companionship, aid, society, and services for Claudia that he provided prior to the injuries he suffered on March 31, 2024.

85.     As a direct, proximate, and foreseeable result of Defendants' breaches of their duties and negligent acts and omissions and the defective and unreasonably dangerous condition of the Grill, Claudia suffered loss of consortium, loss of time and money, loss of emotional support and society, loss of quality in the martial relationship, loss of comfort and affection, loss of care, and loss of household services.

WHEREFORE, Plaintiffs demand a jury trial and pray for judgment against Defendants for actual and punitive damages and for such other and further relief as this Court deems just and proper.

THE STEINBERG LAW FIRM, LLC
3955 Faber Place Drive, Suite 300
North Charleston, SC 29405
(843) 720-2800


By: _____ s/Elliotte Quinn _____

F. Elliotte Quinn IV
SC Bar No.: 100450
USDSC Fed. ID No.: 12563
equinn@steinberglawfirm.com

Michael Jordan
SC Bar No.: 74902
USDSC Fed. ID No.: 10304
mjordan@steinberglawfirm.com

*Attorneys for Plaintiff*